UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LINDA J. SHENKO,

              Petitioner,

                                          5:05-CV-00600

    v.

UNITED STATES OF AMERICA,

              Respondent,
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LINDA J. SHENKO<br>Petitioner *pro se*<br>4956 Westmoreland Road<br>Whitesboro, NY 13492 | |
| HON. GLENN T. SUDDABY<br>United States Attorney for the<br>Northern District of New York<br>Attorney for Respondent<br>P.O. Box 7198<br>100 South Clinton Street<br>Syracuse, NY 13261-7198 | ANDREW T. BAXTER<br>Assistant United States Attorney |

NEAL P. McCURN, SR. J.
_____

**MEMORANDUM DECISION AND ORDER**

       On April 16, 2003, Petitioner Linda J. Shenko ("Petitioner") pled guilty before Senior District Judge Howard G. Munson to one count of making a false statement relating to an Employment Retirement Income Security Act ("ERISA") plan from which she embezzled over $34,000. On June 14, 2004, Petitioner was sentenced to a ten month prison term with an ensuing three years of supervised release, and was ordered to pay restitution of $29,091.36. Petitioner's

special conditions of supervised release required participation in a mental health and substance abuse program. Neither conviction or sentence was appealed, and Petitioner served her term of incarceration.

Petitioner currently has three motions pending before the court. On July 11, 2005, Petitioner filed a *habeas corpus* motion under 28 U.S.C. § 2255, to vacate a special condition of her supervised release that required to participate in a mental health program.

The second motion, also made under § 2255, was filed on December 1, 2005. It purports to "answer" the U.S. Attorney's opposition to Petitioner's first motion. This motion first maintains that she should have been sentenced on a lower embezzlement loss amount, thereby reducing her total offense level under the U.S. Sentencing Guidelines from 12 to 10. It then alleges numerous instances of ineffectiveness of counsel, cumulated by counsel's unauthorized presentation of her mental health condition in an attempt to reduce her sentence, resulted only in the imposition of mental health counseling as a condition of her supervised release. The petition further requests that her supervised relief be cancelled and that her defense attorney, Assistant Public Defender Lisa A. Peebles, be ordered to send Petitioner "my whole and complete file, unabridged."

Petitioner's third § 2255 "letter motion" was filed on January 3, 2007. It asserts that her phones, mail, business activities and personal financial business are being interfered with, and implies that it was caused by the United States Government and her Probation Officer, Mr. Nolan. She seeks to have her former employer, a Mr. Williams, deposed regarding the relationship between Mr. Williams and Mr. Nolan concerning Petitioner's loss of her job. She has also added to her motion papers, a document titled "Emergency Motion," requesting that she

not have to drive from her home in Utica to the Syracuse Probation Office to attend required meetings with Mr. Nolan, when such meetings could easily be held in the Utica Probation Office.

Petitioner's motions will be reviewed and ruled upon seriatim.

The First Motion:

The district courts may impose special conditions of supervised release to the extent that they are 'reasonably related' to (1) the nature and circumstances of the offense and the defendant's history and characteristics; and (2) the need for the sentence to (A) reflect the gravity of the offense, promote respect for the law, and justly punish the defendant for the unlawful behavior, (B) adequately deter criminal behavior, (c) protect the public, and (D) effectively provide necessary educational or vocational training, medical attention, or other correctional treatment. United States v. Germosen, 139 F.3d 120, 131 (2d Cir.1998) (citing, *inter alia*, 18 U.S.C. § 3583(d)).

Each of the above factors, with the exception of subsection (2)(A), are equally applicable considerations in the imposition of a term of supervised release 18 U.S.C. § 3583(c). Moreover, U.S.S.G. § 5D1.3(b) also addresses conditions of supervised release, and it mirrors § 3583(c)'s adoption of § 3553(a). Both 18 U.S.C. § 3583(d)(2) and U.S.S.G. § 5D1.3(b) instruct that conditions of supervised release may restrict liberty to the extent reasonably needed to achieve the above purposes. Id.;  United States v. Lifshitz, 369 F.3d 173, 189 (2d Cir.2004).

While Petitioner asserts that the special condition of her supervised release requiring her to participate in a mental health program is no longer needed, the record in this case amply supports the court's belief that Petitioner needs further mental health counseling. Prior to her

sentencing on May 5, 2004, Petitioner's counsel arranged for her to have a psychological examination. During the period March 29-April 8, 2004, Thomas A. Lazzaro, PH.D., extensively analyzed Petitioner and, subsequently, diagnosed her as having a pathological gambling disorder who blames others for her problems, and seems to have little motivation for change. Indications that this diagnosis was correct was demonstrated when Petitioner was dismissed from further mental health treatment by Mental Health Connections because her focus was on how she perceived the federal judicial system was violating her rights, as opposed to symptoms of her gambling disorder and other psychological dilemma, and on December 21, 2006, when her treatment by Cynthia Davis, LCSW-R, CASAC, was terminated because of Petitioner's resistance to mental health counseling.

Petitioner's conduct with regard to her participation in a mental health program clearly manifests that Petitioner was not properly taking part in this required mandatory procedure, and needs further counseling. Therefore, her motion to vacate the special condition of her supervised relief requiring participation in a mental health program is **DENIED**.

The Second Motion:

The only credit against loss allowed by the sentencing guidelines is money returned to the victim before the offense was detected. USSG § 2B1.1, cmt. n. 3 (E)(I) (2006). There is no credit against a loss when payments are made after the detection of the offense. United States v. Janusz, 135 F.3d 1319, 1324 (10th Cir.1998). The purpose of the loss calculation under the Sentencing Guidelines is to measure the magnitude of the crime at the time it was committed. The fact that a victim has recovered part of its loss after discovery of the embezzlement does not diminish a defendant's culpability for purposes of sentencing. United States v. Nichols,

4

229 F.3d 975, 979 (10th Cir. 2000); United States v. Mau, 45 F.3d 212, 216 (7th Cir.1995) (The time to determine the loss in a scheme is the moment the loss is detected..The fact that an embezzler enters into a repayment scheme after the loss has been discovered does not change the fact of the loss). Therefore, Petitioner's repayments subsequent to its detection is irrelevant to the calculation of loss. Petitioner was sentenced based on the magnitude of her crime, which was measured by the amount of the funds embezzled on the date her unlawful actions were detected..

The United States Probation Department, in compliance with the Commentary to § 2B1.1 of the United States Sentencing Guidelines, calculated a "loss" amount of $34,472.42, based upon the total amount Petitioner originally embezzled from the ERISA funds. (Pre-sentence Investigation Report ("PSIR") at 10, Sentencing Tr. at 45). Petitioner's attorney objected to this loss amount claiming it should be reduced to less than $30,000 based on Petitioner's repayment of several thousand dollars to victims. Shenko Sentencing Mem. at 1: Sentencing Tr. at 18). Over this timely objection, the court found that the loss amount, for sentencing purposes exceeded $30,000, because Petitioner's repayments were made after she learned that some of her victims had discovered her fraudulent conduct and complained to the authorities. (Sentencing Tr. at 45).

To succeed on a claim of ineffective assistance of counsel, petitioner has the heavy burden of showing that counsel's performance was deficient and prejudiced the defense in that it involved errors so serious as to deprive the petitioner of a fair trial whose result was reliable. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed.2d 674 (1984). Petitioner must show that counsel's representation fell below an objective standard of reasonableness, id., 688, the court's examination of counsel's performance must be "highly

5

deferential," id., 689, and the petitioner must overcome a strong presumption that his attorney's performance fell "within the wide range of reasonable professional assistance," id. Furthermore, petitioner must show that, but for counsel's errors, there is a reasonable probability the result of the proceeding would have been different. Id., p. 694. Petitioner has met neither prong of the Strickland test.

The court declines to address Petitioner's argument that her counsel was constitutionally ineffective by failing to interview, depose and present certain witnesses whose testimony could have reduced the level of the charged crime, and made her incarceration unnecessary. A defendant who "pleads guilty unconditionally while represented by counsel may not assert independent claims relating to [the deprivation of constitutional rights that occurred] prior to the entry of the guilty plea." United States v. Coffin, 76 F.3d 494, 497 (2d Cir.1996). Rather, a defendant "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [acceptable] standards ... " Tollett v. Henderson, 411 U.S. 258, 267, 93 S. Ct. 1602, 1608, 36 L. Ed.2d 235 (1973).

Petitioner further claims that her attorney caused her to lose her right to appeal because she did not advise her that she had only 10 days after her sentencing to bring an appeal. This statement belies the fact that the court, after imposing her sentence, clearly stated to her; "I say to you at this time that any appeal from this sentence must be filed within 10 days of the sentence." (Sentencing Minutes p.48).

Petitioner further claims regarding ineffective assistance of counsel is based on her allegations that her attorney's unauthorized presentation of evidence of Petitioner's mental health condition in an unsuccessful attempt to reduced her sentence, caused the imposition of mental

health counseling as a condition of her supervised release.

The question of prejudice under Strickland ordinarily entails consideration of the range of strategies and tactics available to a lawyer. Strickland, 466 U.S. at 689-90, 104 S. Ct. at 2065-66. On that basis, in case after case, the Second Circuit has declined to deem counsel ineffective notwithstanding a course of action (or inaction) that seems risky, unorthodox or downright ill-advised. United States v. Tarricone, 21 F.3d 474, 476 (2d Cir.1993) (decision to forgo testimony of handwriting expert); United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir.1987) (decision to forgo opening statement), *cert. denied*, 484 U.S. 957, 108 S. Ct. 355, 98 L. Ed.2d 380 (1987); Cuevas v. Henderson, 801 F.2d 586, 590 (2d Cir.1986) (questioning that "opened the door" to damaging evidence), *cert. denied*, 480 U.S. 908, 107 S. Ct. 1354, 94 *687 L. Ed.2d 524 (1987). The buried assumption in these Strickland cases is that counsel is present and conscious to exercise judgment, calculation and instinct, for better or worse.

The affidavit of Petitioner's defense counsel, Lisa A. Peebles, Esq., states that Petitioner agreed to undergo a psychological evaluation in an attempt to support a reduced sentence due to diminished capacity. Petitioner did not object to her counsel's efforts to seek a diminished capacity at the sentencing hearing. Based on the recommendations found in Petitioner's psychological evaluation report, and in view of her prior commitment to a Connecticut psychiatric hospital, plus her acknowledged difficulties with gambling, the court ordered Petitioner to take part in mental health and substance abuse programs during her three term of supervised release. (Lazzaro Report pp. 3, 8; Sentencing Minutes p. 47).

That the plan of action of Petitioner's counsel did not result in a reduced sentence did not constitute ineffective assistance within the parameters of Strickland. A tactic used for reasons

that would appear sound to a competent criminal defense attorney, but in hindsight appeared to be erroneous, did not make counsel's assistance constitutionally defective. McMann v. Richardson, 397 U.S. 759, 771 n. 14, 90 S. Ct. 1441, 25 L. Ed.2d 763 (1970)

Plaintiff's motion claiming that her sentence should have been lower, and that she received ineffective assistance of counsel is **DENIED.**

The Third Motion:

Petitioner's claims of harassment by United States Probation Officer Nolan and her former employer, Mr. Williams, even if credited, do not provide a basis for 28 U.S.C. § 2255 relief as to her criminal conviction or sentence. Hathaway v. United States, 2006 WL3703208 ( D. Me December 6, 2006). Consequently, Petitioner's third motion is **DENIED.**

**IT IS SO ORDERED**

Dated: February  26 , 2007
Syracuse, New York

_____
Neal P. McCurn
Senior  U.S. District Judge